**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MUNICIPAL REVENUE COLLECTION CENTER ("CRIM"),<br><br>  **APPELLANT,**<br><br>    **v.**<br><br> PANTOJA-ARROYO, *et al.*,<br><br>  **APPPELLEES.** | **CIVIL NO.** 12-1293 (JAG) |

**OPINION & ORDER**

Garcia-Gregory, D.J.

Appellant Municipal Revenue Collection Center (hereinafter referred to by its Spanish acronym, "CRIM"), appeals from the Bankruptcy Court's ("BC") decision granting $2,500 in costs and attorney's fees to Debtor-Appellees Gilberto Pantoja-Arroyo and Griselva Sanchez-Feliciano (the "Debtors"). Both parties timely filed their briefs. For the reasons that follow, the decision below is affirmed.

**PROCEDURAL BACKGROUND**

In the bankruptcy proceedings below, CRIM filed a claim alleging unpaid property taxes in excess of $20,000 by Debtors. The Debtors timely objected to CRIM's claim. Though the objection was notified electronically and by mail, CRIM failed

CIVIL NO. 12-1293 (JAG)                                          2

to respond. (<u>See</u> Docket No. 2-2). The BC then ruled in favor of Debtors and entered an order disallowing that Claim.

Though the BC denied CRIM's claim, Debtors found that CRIM still maintained record of such claim in its internal systems, and continued to pester them for payment. (<u>Id.</u>). Consequently, Debtors moved the BC to enter a declaratory judgment stating that its previous order disallowing Claim 13 was *res judicata*. (<u>See</u> Docket No. 2, p. 6). Debtors also moved the BC to compel CRIM to certify Debtors as having zero balance, and for leave to file a bill of costs against CRIM. (<u>Id.</u>). Once again, CRIM failed to contest these matters. The BC then issued an order granting Debtors' requests. Though the Order clearly stated that Debtors' request was granted, CRIM states that "no Order directed at CRIM was contained in said document." (<u>Id.</u>).

Debtors filed their bill of costs in August 2011. CRIM then gave signs of life, moving the BC for an extension of time to respond to the bill of costs filed by Debtors. (<u>Id.</u>). The Bankruptcy Court allowed the extension, but clearly stated that "[t]he reply by CRIM is limited to the issue of the amount of the bill of costs requested by Debtor," and that it would "not entertain legal arguments against the granting of bill of costs." (<u>Id.</u>). The court also ordered Debtors' attorney to file "detailed time records" in support of their request for costs.

Though Debtors complied, CRIM points out that their itemization was not accompanied by a sworn or unsworn statement of counsel. (Id.).

After some motion practice, the BC ruled in favor of Debtors. The BC noted with disdain that CRIM's opposition addressed the legal merits of the bill of costs and the propriety of the BC's grant of attorney's fees. CRIM then moved the BC to reconsider its ruling, asking as well that the BC issue findings of fact and conclusions of law on the following matters:

> whether due notification was given CRIM through a
> clerical employee; whether the provisions of 28 U.S.C.
> § 1924 were complied with; whether the itemized items
> in the bill of costs properly belong to this case; and
> whether relief under Fed. R. Bankr. P. 9023 is proper
> in this case as a result of the above stated.

Debtors filed a detailed response, *which the BC incorporated and adopted as its findings* in denying CRIM's motion for reconsideration. (Docket No. 2-14). These are thus relevant in assessing CRIM's appeal, and the relevant parts will be reproduced below. (See Docket No. 2-13).

The BC first found that CRIM had been properly served, stating that:

> All of Debtor's motions certified service on CRIM and
> the Attorney General for the Commonwealth by mail. As
> for the claim, raised for the first time, that a
> pregnant clerical employee received the notices of the
> Debtor's motions, the same is an admission that notice
> was delivered to CRIM. It is not the Debtors' or the

CIVIL NO. 12-1293 (JAG)                                                    4

> Court's business to know whom, within CRIM, sits at a
> desk where the mail is delivered, or his or her
> position or physical condition. Service was made, and
> CRIM so admits. (<u>Id.</u> at ¶ 4)

The BC also added that CRIM's attorneys were also duly notified

through the Court's CM/ECF electronic mailing system. (<u>Id.</u> at ¶

6).

Next, the BC addressed CRIM's argument that there was an

improper statutory basis for the award of fees. The BC found as

follows:

> [S]uffice it to say that the motion for attorney fees
> was addressed to the Court's inherent authority and
> power *to impose and/or award costs, fees and other
> monetary sanctions* against parties and attorneys
> appearing before it.

(<u>Id.</u>)(our emphasis). After that order was entered, CRIM filed

the appeal now pending before this Court. In this appeal, CRIM

does not appear to challenge the factual findings made by the

BC. Finding no clear error, we proceed under the same.

**STANDARD OF REVIEW**

On appeal, the court can "affirm, modify, or reverse a

bankruptcy judge's judgment, order, or decree or remand with

instructions for further proceedings." Fed. R. Bankr. P. 8013.

In doing so, the Court will apply a "clearly erroneous" standard

to the lower court's factual findings, and a plenary one

regarding its legal conclusions. <u>Palmacci v. Umpiérrez</u>, 121 F.3d

781, 785 (1st Cir. 1997).

"Absent either a mistake of law or an abuse of discretion, the bankruptcy court ruling must stand." Picciotto v. Salem Suede, Inc. (In re Salem Suede, Inc.), 268 F.3d 42, 44 (1st Cir. 2001). An abuse of discretion can occur when the Bankruptcy Court ignores "a material factor that deserves significant weight, [relies] on an improper factor, or, even if it [considers] only the proper mix of factors, by making a serious mistake in judgment." Id.

## DISCUSSION

CRIM's argument on appeal boils down to the following: 1) that the notification to the "clerical employee, as opposed to the legal Director at CRIM," did not ensure proper opportunity for CRIM to defend itself, (Docket No. 2, p. 11); and 2) that the bill of costs for attorneys' fees is "fatally flawed, since it requests purported attorneys' fees incurred in their near totality in relation to a state court case, not this case, and it failed to contain the sworn or unsworn statement under penalty of perjury," as ostensibly required by law. (Id.). Both arguments fail.

## Due Process

The Court finds it difficult to understand how CRIM can claim it did not have notice of the BC's decision it now

CIVIL NO. 12-1293 (JAG)                                               6

challenges, given that CRIM *injected itself* in the bankruptcy
proceedings below by filing a claim for unpaid taxes against
Debtors. (See Docket No. 2-1). As the BC found, CRIM had ample
notice-in-fact since its attorneys were registered in the BC's
electronic notification system. Consequently, it is irrelevant
that CRIM's legal director was never directly notified by mail.[1]
The Court is thus satisfied that CRIM had notice of the
proceedings surrounding its own claim in the Bankruptcy Court.

The BC's Order Granting the Bill of Costs

    Local Bankruptcy Rule 9013-1 states that the BC may grant
the relief requested by an unopposed motion, "unless the relief
requested is prohibited by law" or lies "against public policy."
Though the BC never stated it was acting specifically under that
rule, it is uncontested that Debtors' opposition to CRIM's claim
and their subsequent bill of costs were both granted without any
opposition by CRIM.

    The relief requested by Debtors, the grant of attorney's
fees, is not prohibited but rather specifically allowed by law.[2]

---

[1] It would be relevant, for example, if what is being argued is
that the defendant was never served with process in a judicial
proceeding. In contrast, CRIM dove into the bankruptcy
proceedings of its own accord.
[2] The Court notes that the Local Bankruptcy Rules allow the
presiding judge to modify the same *sua sponte*. See Local
Bankruptcy Rule 1001-1(c). Therefore, any other interpretation
of Local Rule 9013-1 (for example, that the BC could not grant

CIVIL NO. 12-1293 (JAG)                                              7

As the BC recognized, "Fed. R. Civ. P. 54, made applicable to bankruptcy through Fed. R Bankr. P. 7054," allows the BC to award attorney's fees. Moreover, the BC considered that the relief should also have been granted by virtue of its inherent power to issue monetary sanctions. (<u>See</u> Docket No. 2-13 at ¶ 9).

It is clear, then, that the BC acted entirely within its discretion to grant the motion as requested. In light of the foregoing, the Court finds that CRIM's failure to timely oppose Debtors' request for fees dooms this appeal.

## CONCLUSION

The order granting attorney's fees is **affirmed**. The Court further orders that the costs of this appeal be taxed against CRIM pursuant to Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1920.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of March, 2013.

<u>S/ Jay A. Garcia-Gregory</u>
  JAY A. GARCIA-GREGORY
United States District Judge

---

the relief as unopposed because it lacked a legal basis to do so) was supplanted by the BC's specific order preventing CRIM from challenging the legal basis for Debtors' request for fees.